Landon Lerner, Esq. (Bar No.: 13368)
LERNER & WEISS
400 S. 4th Street, Suite 500
Las Vegas, NV 89101
Tel: (619)577-4871
landonl@lernerweisslaw.com

Robert Tauler (*Pro Hac Pending*)
Tauler Smith LLP
11111 Santa Monica Blvd., Suite 500
Los Angeles, California 90025
Telephone: (310) 746-5601
rtauler@taulersmith.com

*Attorneys for Plaintiff*
NUTRITION DISTRIBUTION LLC

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| NUTRITION DISTRIBUTION LLC, an Arizona Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>Dylan Culbertson aka Dylan Gemelli dba SARMS X, SARMS1 and iSARMS.com, and DOES 1 through 10, inclusive,<br><br>Defendants. | **CASE NO.:** 16-2357<br><br>**COMPLAINT FOR FALSE ADVERTISING IN VIOLATION OF THE LANHAM ACT § 42 (a)(1)(B))**<br><br>**[DEMAND FOR A JURY TRIAL]** |

COMPLAINT

Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff"), by and through its undersigned attorneys, submits this Complaint against defendant Dylan Culbertson aka Dylan Gemelli dba SARMS X and iSARMS.com ("SARMS X" or "Defendant"), and in support thereof, avers as follows:

## INTRODUCTION

1. This is a civil action arising out of Defendant's unlawful and deceptive business practices and false and misleading advertising in connection with its products containing "Selective Androgen Receptor Modulators" ("SARMs"), including but not limited to, S-4 (Andarine), MK-2866 (Ostarine), MK-677 (Nutrobal), RAD-140, GW-501516 (Cardarine), and LGD-4033 (collectively, the "Research Chemicals").

2. SARMs, like Defendant's "Research Chemicals," are synthetic drugs with similar effects to illegal anabolic steroids. Consequently, there is a growing epidemic of online retailers, like Defendant, selling SARMs (and other illicit and misbranded drugs) to bodybuilders, competitive athletes, fitness enthusiasts, and other consumers seeking to enhance their physiques and physical performance.

3. Critically, Defendant has falsely represented to consumers on its website and product labeling that its "Research Chemicals" are "for research use only" and "not for human consumption." Contrary to these purported "disclaimers," Defendant clearly markets and advertises its products for personal use and consumption. In this regard, SARMS X claims on its website that its Research Chemicals will provide numerous purported health benefits, including but not limited to, treating obesity, treating osteoporosis and muscle wasting, increasing muscle tissue, preventing bone loss, healing joints and injuries, reducing body fat, increasing growth hormone, promoting weight loss, increasing muscle strength, and increasing lean muscle mass.

4. Moreover, Defendant misrepresents to consumers that its "Research Chemicals" are purportedly safe and have little to no adverse health and safety

consequences. Indeed, Defendant fails to disclose any of the many recognized side effects of using SARMs.

5. For example and without limitation, SARMS X touts numerous purported health "advantages and benefits" of its MK-2866 (Ostarine) product to consumers, including but not limited to, "excellent for lean mass gains," "truly shines when used for body recomposition," "helps increase endurance (aerobic or anaerobic)," "joint and injury healing abilities," "great sense of well being while on," and "large increases in strength." Moreover, SARMS X promises consumers all of these benefits with "no negative effects on liver, blood pressure or other internal organs" and "rapid recovery time."

6. With respect to its Nutrobal (MK-677) product, SARMS X promises consumers the following "wide array of benefits," including but not limited to, "increases in fat free mass," "enhanced sleep quality," "a treatment for obesity and fat loss," "lowering of bad cholesterol (LDL)," "significant improvements in nitrogen balance," "reversal of diet-induced nitrogen wasting," "treatment of catabolic conditions," "increase in basil [sic] metabolic rate," "oral administration (no injections required)," and "overall sense of well-being." Again, SARMS X promises consumers these benefits with "little to no side effects."

7. Defendant has falsely marketed, advertised, and sold its products as "Research Chemicals," while turning a blind eye to their actual use by consumers, who are uninformed of their known health and safety risks.

8. In fact, SARMs may pose significant health and safety risks to consumers. Indeed, medical experts have opined that products containing SARMs "have many recognized potential serious side effects, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. Thus, medical experts

have concluded that the sale of products containing SARMs, like Defendant's "Research Chemicals," is "highly dangerous to public safety."

9. Defendant also fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant markets its products to bodybuilders, competitive athletes, and other consumers seeking to improve their physical performance and physiques.

10. This action seeks to enjoin Defendant from the marketing and sale of its "Research Chemicals," in addition to other appropriate relief, as Defendant is illegally and falsely marketing such products in violation of the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*

11. Defendant's false, misleading, illegal and deceptive practices have unjustly enriched Defendant at the expense of Plaintiff, and have caused Plaintiff extensive and irreparable harm, including, but not limited to, loss of revenue, disparagement, and loss of goodwill.

## PARTIES

12. Plaintiff Nutrition Distribution, LLC, dba Athletic Xtreme ("ND" or "Plaintiff") is an Arizona limited liability company with its principal place of business at 14215 N. 8th Pl., Phoenix, Arizona, 85022.

13. Defendant Dylan Culbertson aka Dylan Gemelli dba SARMS X, SARMS1 and iSARMS.com ("SARMS X " or "Defendant") is an individual residing in Nevada.

14. Plaintiff is ignorant of the true names and capacities of defendants sued herein as Does 1- 10, inclusive, and therefore sued these defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of these fictitiously named defendants is responsible in some manner for the occurrences

herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by the aforementioned defendants.

## JURISDICTION AND VENUE

15. This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. 1332 (diversity jurisdiction) because Plaintiff asserts causes of action arising under federal law and the parties are citizens of different states and the controversy exceeds the value of $75,000.

16. This Court has personal jurisdiction over Defendant because it has, directly or through its intermediaries (including distributors, retailers, and others), developed, licensed, manufactured, shipped, distributed, offered for sale, sold, and advertised its nutritional supplement products in the United States, the State of California, and this district, including but not limited to, its "Research Chemicals."  Defendant has purposefully and voluntarily placed these products into the stream of commerce with the expectation that they will be purchased in this district.

17. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions which gave rise to the claim occurred in this district.  *Allstar Marketing Group, LLC v. Your Store Online*, LLC, 666 F. Supp. 2d 1109, 1128 (C.D. Cal. 2009).  Alternatively, venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

18. The nutritional supplement industry is one of the fastest growing and most lucrative in the United States.  A recent Forbes article estimates that nutritional supplement sales accounted for $32 billion in revenue in 2012 and predicts this number to grow to $60 billion within ten years.  The growth and size of the nutritional supplement market and the relatively low barriers to entry provide perverse incentives for

unlawful and deceptive practices prohibited by the Arizona Consumer Fraud Act, A.R.S. § 44-1521, *et seq.*, as well as other illegal activity.

## Plaintiff Nutrition Distribution & "Advanced PCT"

19. Plaintiff is a cutting edge sports supplement manufacturer and marketer. From its inception, Plaintiff was a leader in the nutritional supplement market, specifically for bodybuilding.

20. Plaintiff has products in several categories of bodybuilding products, including pre-workouts, muscle-gainers, fat burners, and male performance enhancement.

21. Around 2008, Plaintiff began developing a new product in the muscle-gainer sub-market of the nutritional supplement world.

22. After devoting its resources for over a year on product development and testing, Plaintiff introduced "Advanced PCT" in July 2009.

## Defendant SARMS X And Its "Research Chemicals"

23. Defendant SARMS X is a competing supplement company in Nevada.

24. Defendant has falsely represented to consumers that its "Research Chemicals" are for "for research use only" and "not for human consumption." Contrary to these purported "disclaimers," Defendant clearly markets and advertises its products for personal use and consumption.

25. Indeed, SARMS X claims on its website that its Research Chemicals will provide numerous purported health benefits, including but not limited to, treating obesity, treating osteoporosis and muscle wasting, increasing muscle tissue, preventing bone loss, healing joints and injuries, reducing body fat, increasing growth hormone, promoting weight loss, increasing muscle strength, and increasing lean muscle mass.

26. For example, SARMS X touts numerous purported health "advantages and benefits" of its MK-2866 product to consumers, including but not limited to, "excellent for lean mass gains," "truly shines when used for body recomposition," "helps increase

endurance (aerobic or anaerobic)," "joint and injury healing abilities," "great sense of well being while on," and "large increases in strength."  Moreover, SARMS X promises consumers all of these benefits with "no negative effects on liver, blood pressure or other internal organs" and "rapid recovery time."

27. With respect to its Nutrobal (MK-677) product, SARMS X promises consumers the following "wide array of benefits," including but not limited to, "increases in fat free mass," "enhanced sleep quality," "a treatment for obesity and fat loss," "lowering of bad cholesterol (LDL)," "significant improvements in nitrogen balance," "reversal of diet-induced nitrogen wasting," "treatment of catabolic conditions," "increase in basil [sic] metabolic rate," "oral administration (no injections required)," and "overall sense of well-being."  Again, SARMS X promises consumers these benefits with "little to no side effects."

28. Defendant has falsely marketed, advertised, and sold its products as "Research Chemicals," while turning a blind eye to their actual use by consumers, who are uninformed of their known health and safety risks.

29. Defendant's false advertising is harmful to the marketplace for dietary and nutritional supplements and potentially to individual consumers.  Defendant has created an illegitimate marketplace of young bodybuilders who will gain muscle "at all costs," but who are not informed of the dangers of Defendant's products.  Users of Defendant's "Research Chemicals" have little incentive to use a natural product like Advanced PCT until they are hurt or the "Research Chemicals" are taken off the shelves.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(False Advertising in Violation of Section 43(a)(1)(B) of the Lanham Act)**

30. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

31. On its website and through other promotional materials, Defendant has purposely made false and misleading statements concerning its "Research Chemicals." In particular, Defendant has falsely represented to consumers that its "Research Chemicals" are for "for research use only" and "not for human consumption."

32. Contrary to these purported "disclaimers," Defendant clearly markets and advertises its products for personal use and consumption. In this regard, SARMS X claims on its website and otherwise that its Research Chemicals will provide numerous purported health benefits, including but not limited to, treating obesity, treating osteoporosis and muscle wasting, increasing muscle tissue, preventing bone loss, healing joints and injuries, reducing body fat, increasing growth hormone, promoting weight loss, increasing muscle strength, and increasing lean muscle mass.

33. Critically, Defendant misrepresents to consumers that its "Research Chemicals" are purportedly safe and have little to no adverse health and safety consequences. Indeed, Defendant fails to disclose any of the many recognized side effects of using SARMs.

34. For example, SARMS X touts numerous purported health "advantages and benefits" of its MK-2866 product to consumers, including but not limited to, "excellent for lean mass gains," "truly shines when used for body recomposition," "helps increase endurance (aerobic or anaerobic)," "joint and injury healing abilities," "great sense of well being while on," and "large increases in strength." Moreover, SARMS X promises consumers all of these benefits with "no negative effects on liver, blood pressure or other internal organs" and "rapid recovery time."

35. With respect to its Nutrobal (MK-677) product, SARMS X promises consumers the following "wide array of benefits," including but not limited to, "increases in fat free mass," "enhanced sleep quality," "a treatment for obesity and fat loss," "lowering of bad cholesterol (LDL)," "significant improvements in nitrogen balance," "reversal of diet-induced nitrogen wasting," "treatment of catabolic conditions,"

"increase in basil [sic] metabolic rate," "oral administration (no injections required)," and "overall sense of well-being." Again, SARMS X promises consumers these benefits with "little to no side effects."

36.  Defendant has falsely marketed, advertised, and sold its products as "Research Chemicals," while turning a blind eye to their actual use by consumers, who are uninformed of their known health and safety risks.

37.  In fact, SARMs may pose significant health and safety risks to consumers. Indeed, medical experts have opined that products containing SARMs "have *many recognized potential serious side effects*, including hepatoxicity (liver damage), and markedly lower plasma HDL cholesterol (raising the risk of heart disease)," and may have even more serious consequences that are currently unknown. Thus, medical experts have concluded that the sale of products containing SARMs, like Defendant's "Research Chemicals," is "*highly dangerous to public safety*."

38.  Moreover, Defendant fails to disclose that SARMs are specifically prohibited for use in sporting events by the World Anti-Doping Agency and the U.S. Anti-Doping Agency, despite the fact that Defendant markets its products to body builders, competitive athletes, and other consumers seeking to enhance their physical performance and physiques.

39.  The use of such falsely marketed substances has the tendency to deceive a substantial segment of the public and consumers, including those in California, into believing that they are purchasing a product with different characteristics.

40.  The deception is material because it is likely to influence a consumer's purchasing decision, especially if the consumer is concerned about the consequences of taking steroids or other illegal substances.

41.  Defendant has introduced its false and misleading statements into interstate commerce via marketing and advertising on various websites and shipment of its products into interstate commerce containing false and misleading advertising.

42. Plaintiff has suffered both an ascertainable economic loss of money and reputational injury by the diversion of business from Plaintiff to Defendant and the loss of goodwill in Plaintiff's products. Indeed, Defendant's conduct is a black eye on the industry as a whole, and has the tendency to disparage Plaintiff's products and goodwill.

43. Defendant's actions, as described above, constitute false and misleading descriptions and misrepresentations of fact in commerce that, in commercial advertising and promotion, misrepresent the nature, characteristics, and qualities of its products in violation of Section 43(a)(1)(B) of the Lanham Act.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Nutrition Distribution LLC prays for judgment against Defendant SARMS X ("SARMS X " or "Defendant") as follows:

1. For preliminary and permanent injunctive relief enjoining Defendant from producing, licensing, marketing, and selling any and all products containing "Selective Androgen Receptor Modulators" ("SARMs"), including but not limited to, S-4 (Andarine), MK-2866 (Ostarine), MK-677 (Nutrobal), RAD-140, GW-501516 (Cardarine), and LGD-4033, and enjoining Defendant from use of its website "www.sarmsx.com";
2. For an award of compensatory damages to be proven at trial in accordance with 15 U.S.C. § 1117;
3. For an award of any and all of Defendant's profits arising from the foregoing acts in accordance with 15 U.S.C. § 1117 and other applicable laws;
4. For restitution of all Defendant's ill-gotten gains;
5. For treble damages in accordance with 15 U.S.C. § 1117;
6. For punitive damages;
7. For costs and attorneys' fees; and

///

8. Any other relief the Court may deem appropriate.

DATED: October 7, 2016                    LERNER & WEISS


By: _____
Landon Lerner, Esq.
NUTRITION DISTRIBUTION LLC

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

DATED:  October 7, 2016                    LERNER & WEISS


                                   By: _____
                                         Landon Lerner, Esq.
                                         NUTRITION DISTRIBUTION LLC